### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE: SMITH & NEPHEW BIRMINGHAM HIP RESURFACING (BHR) HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL No. 2775<br>Master Docket No. 1:17-md-2775<br><br>JUDGE CATHERINE C. BLAKE<br><br>THIS DOCUMENT RELATES TO:<br><br>*Paula and Jace Redick v. Smith & Nephew, Inc.*, No. 1:17-cv-00944 |

### MEMORANDUM

Pending before the court is a motion for new trial in the BHR track case of *Paula and Jace Redick v. Smith & Nephew, Inc.*, No. 1:17-cv-00944. (ECF 751) The Redicks move for a new trial under Fed. R. Civ. P. 59(a)(1)(A). The motion has been fully briefed, and oral argument was heard on October 20, 2021. For the reasons below, the motion will be denied.

### BACKGROUND & PROCEDURAL HISTORY

This case concerns alleged injuries suffered by plaintiffs Paula and Jace Redick as a result of Ms. Redick's use of the Birmingham Hip Resurfacing Device ("BHR"), an artificial hip implant developed, designed, manufactured, and sold by defendant Smith & Nephew. The BHR replaces the hip joint with metal components—capping the femoral head with a metal covering and inserting a metal cup within the acetabular cup—to recreate the same ball and socket structure that occurs naturally. *In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prod. Liab. Litig. ("In re BHR")*, 300 F. Supp. 3d 732, 736 (D. Md. 2018). The friction between the metal components allegedly can cause metal debris to accumulate within the joint and blood stream of the patient. Metal debris from the device can cause pain, metallosis, and other serious

1

complications that may require corrective surgery or revision to a different device. *Id.* In 2015, Smith & Nephew voluntarily recalled some BHR devices due to unreasonably high rates of failure in women and in men needing femoral head sizes 46 mm or smaller, for reasons including complications due to metal debris. The plaintiffs claim Ms. Redick, a resident of North Carolina, was one such patient—her BHR implant required revision to a different implant due, in her surgeon's and expert's opinions, to symptoms caused by the accumulation of metal debris.

The 2021 trial in Ms. Redick's case ran from July 26 to August 13. After deliberations, the jury returned a verdict in favor of Smith & Nephew. Specifically, applying North Carolina law, the jury found (1) as to breach of express warranty, that no warranty had been made; and (2) as to negligence, that Smith & Nephew had made a false or misleading representation, but Ms. Redick's surgeon did not justifiably rely on that representation. Accordingly, the jury did not reach the issue of compensatory or punitive damages. (ECF 725, Special Verdict Form). The plaintiffs moved for a new trial on August 24, 2021. (ECF 751). Smith & Nephew responded (ECF 766, 3057), and the Redicks replied (ECF 768, 3125).[1] Supplemental briefing was filed in December 2021 following the deposition of Professor Steven Graves. (ECFs 806, 808).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(a)(1)(A) permits the court to, upon motion, "grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." A court should grant a motion for a new trial only if the verdict is against the clear weight of the evidence, is based on evidence which is false, or will result in a

---

[1] Some documents have multiple docket numbers because they are filed under the Redicks' individual case and the larger MDL case number. The former (smaller) number will be used to reference such documents throughout this memorandum. Documents with ECF citations in the 2000s to 3000s are filed under 1:17-md-2775; while documents with ECF citations in the 700s and 800s are filed under 1:17-cv-00944.

miscarriage of justice. *Finch v. Covil Corp.*, 388 F. Supp. 3d 593, 608 (M.D.N.C. 2019) (citing

*Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)). The court may weigh

evidence, assess credibility, and exercise its discretion in ruling on a motion for a new trial. *Finch*,

388 F. Supp. 3d at 608 (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)).

A new trial should not be granted unless it is reasonably clear that prejudicial error has occurred

or substantial justice has otherwise not been done. *Pathways Psychosocial Support Ctr., Inc. v.*

*Town of Leonardtown*, 223 F. Supp. 2d 699, 706 (D. Md. 2002) (citing *Vanwyk Textile Sys., B.V.*

*v. Zimmer Mach. Am., Inc.,* 994 F. Supp. 350, 358 (W.D.N.C. 1997)).

## DISCUSSION

The Redicks raise seven arguments in support of granting a new trial, which the court will

address sequentially below.

### I.        Testimony of Defense Expert Dr. Michael Mont

The plaintiffs first argument for a new trial concerns the trial testimony of Dr. Michael

Mont. Specifically, the Redicks contend that:

1)  Their case was unfairly prejudiced by Dr. Mont's undisclosed opinion testimony
    about what a reasonable orthopedic surgeon knew or should have known at the time
    of Ms. Redick's surgery about the risks of the BHR for female patients and those
    with smaller head sizes;

2)  The court's decision to strike that specific portion of Dr. Mont's testimony was
    insufficient to remedy the prejudice it created; and

3)   The court's limitation of the plaintiffs' cross-examination of Dr. Mont was
    arbitrary and prejudicial.

First, with respect to the portion of Dr. Mont's contested testimony regarding what a reasonable orthopedic surgeon would have known at the time of Ms. Redick's surgery, the plaintiffs contend that it came as a surprise so inconsistent with substantial justice as to justify a new trial. *See* Fed. R. Civ. P. 59(a)(1)(A). They rely on the fact that Dr. Mont's expert report did not, as required under Fed. R. Civ. Proc. 26(a)(2)(B), include that specific opinion. As the plaintiffs acknowledge, however, for surprise testimony to require a new trial, the movant must show the surprise is "inconsistent with substantial justice" and resulted in actual prejudice that deprived the party of a fair hearing. (ECF 751-1 at 4-5); *Twigg v. Norton Co.*, 894 F.2d 672, 675 (4th Cir. 1990).

### a. Dr. Mont's Relevant Testimony Was Not a Surprise

The record does not support the Redicks' argument that Dr. Mont's testimony led to actual prejudice to the plaintiffs, nor can much of it fairly be described as any kind of "surprise." Plaintiffs' counsel demonstrated their understanding of the gist of Dr. Mont's testimony at his deposition, asking him:

> Q. And one of your opinions, I believe, in this case, is that the medical community knew that small femoral head sizes had an increased risk of revision; correct? A. Yes. Q. The medical community knew about that; correct?. . . A. Yes. . . I published it very early, and I talked about it in my conference and people knew about it.

(ECF 766-2 Ex. B, Mont Dep. at 105) Further, as Smith & Nephew points out, the treating surgeon, Dr. Jack Bowling, was allowed to offer undisclosed opinion testimony in his direct examination by plaintiffs' counsel about what a reasonable surgeon would have wanted to know at the time of Ms. Redick's surgery. The plaintiffs then declined to call their expert, Dr. Jeffrey Shapiro, whose testimony Dr. Mont had been expected to address.

At trial, the court permitted most of the contested testimony, but granted a motion to strike Dr. Mont's opinion as to "what a reasonable orthopedic surgeon would have known or would have understood" based on the information available to the orthopedic community at the time, because

his report had not contained that specific language.[2] The instruction was given over Smith &

Nephew's objection out of an abundance of caution. Dr. Mont's opinions about the widespread

availability of information accessible by the medical community in 2012 about the risks of the

BHR for certain patients, about which plaintiffs' counsel had the opportunity to depose him, cannot

fairly be considered a surprise warranting a new trial.

### b.  The Remedy Was Sufficient

Second, the plaintiffs claim that, by allowing two days to pass between Dr. Mont's

"surprise" opinion testimony and the instruction to the jury to disregard that specific opinion, the

testimony went unrebutted in jurors' minds, causing the plaintiff unfair prejudice. When a witness

offers inadmissible opinion evidence, a new trial is not necessary if the court subsequently

remedies the error by an instruction, and juries are presumed to follow an instruction to disregard

evidence. *United States v. Ford*, 88 F.3d 1350, 1364 (4th Cir. 1996); *see also U.S. v. Runyon*, 707

F.3d 475, 497 (4th Cir. 2013). The passage of less than two full days between when Dr. Mont's

testimony was presented and when the limiting instruction was provided is not so long that this

presumption is invalidated. Additionally, the court allowed the plaintiffs to recall Dr. Bowling in

rebuttal to testify as to what a reasonable doctor should have known about the increased risk of

---

[2] Specifically, the court instructed the jury as follows:

> [R]egarding the testimony that you heard from Dr. Mont, I need to give you an additional instruction. You heard him testify to what information, in his opinion, would have been available to reasonable orthopedic surgeons about the risk of revision for the BHR for women and patients needing smaller head sizes in the time frame through March 2012. And you also heard him testify to his opinion about the significance of the ad hoc reports in light of the other information that was available, and you may consider those opinions. However, Dr. Mont also testified to, in his opinion, what a reasonable orthopedic surgeon would have known or would have understood based on that information. Without criticizing Dr. Mont, I must instruct you to disregard that part of his testimony, that specific opinion.

(ECF 766-12, Ex. L at 9-10).

revision. In that testimony, consistent with Dr. Mont's opinion, Dr. Bowling admitted that he knew of the increased risk of revision for female patients and patients receiving smaller head sizes at the time of Ms. Redick's implant. (ECF 766-12 Ex. L at 34-35).

In summary, given the lack of any substantial surprise, the limiting instruction nonetheless given by the court, and Dr. Bowling's testimony on rebuttal, the plaintiffs have not shown either actual prejudice or any inconsistency with substantial justice.

c.   **Constraints on the Cross-Examination of Dr. Mont Were Not Unfairly Prejudicial**

Third, the plaintiffs argue that the court abused its discretion by arbitrarily curtailing the plaintiffs' cross-examination of Dr. Mont. District courts have broad discretion to impose time limitations at trial and control the order and timing of the presentation of witnesses. *See* Fed. R. Evid. 611(a); *Benjamin v. Sparks*, 986 F.3d 332, 345 (4th Cir. 2021) ("It is within the authority of district courts to set time limits in civil cases."); *see also Lidle v. Cirrus Design Corp.*, 278 F.R.D. 325, 331-32 (S.D.N.Y. 2011). Using this discretion, the court may direct testimony to be taken over several days, and may impose reasonable limits on cross-examination due to concerns of repetitious interrogation, confusion of the issues, or exclusion of subjects of marginal relevance, *inter alia. See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (addressing the Confrontation Clause). To obtain a new trial based on improper time limitations, a movant "must show what it would have done with the other [time] if it had been given them." *McKnight v. Gen. Motors Corp.*, 908 F.2d 104, 115 (7th Cir. 1990) (superseded by statute on other grounds); *Lidle*, 278 F.R.D. at 332.

Though the Redicks suggest that the court limited their time to cross-examine Dr. Mont so that he could go on vacation, they ignore the scheduling constraints imposed by their insistence that the defense call its witnesses (specifically Dr. Thorsten Seyler) earlier than planned because

of the plaintiffs' last-minute decision to dispense with several witnesses anticipated in their case-in-chief. The plaintiffs were allowed to cross-examine Dr. Mont over the course of three days: August 4th, 5th, and 7th, permitting questioning on a variety of relevant issues. Smith & Nephew also was limited in its time to question Dr. Mont—indeed, it was allotted less time than the plaintiffs. And, as mentioned above, the court additionally provided the plaintiffs time to call Dr. Bowling as a rebuttal witness. Finally, the plaintiffs provide no identifiable and specific examples of probative, non-cumulative evidence excluded by the time limits. The court's decision to limit the plaintiffs' cross-examination of Dr. Mont was neither arbitrary nor unfair.

The plaintiffs' remaining arguments regarding Dr. Mont's testimony are not persuasive. Cross-examination of Dr. Mont about the 2015 BHR recall, for example, would have been largely irrelevant to his testimony regarding the medical literature available in 2012 and would have introduced an unfairly prejudicial issue properly precluded under Rule 403.[3] Accordingly, the plaintiffs have not shown that any of their concerns about Dr. Mont's testimony warrant a new trial.

## II.    The Inclusion of The Element of Justifiable Reliance in the Jury Instructions

The plaintiffs' next argument in support of a new trial is that the element of justifiable reliance should not have been included in the jury instructions applicable to the claim of general negligence under North Carolina law. Question six of the jury's Verdict Form read as follows: "Do you find by the greater weight of the evidence that Dr. Bowling justifiably relied on false or misleading representations by defendant Smith & Nephew that proximately caused Paula Redick's

---

[3] While the court's opinion only addresses some of the arguments raised by the plaintiffs, all arguments included in the parties' briefings have been considered.

injuries?" (ECF 725 ¶ 6). As discussed below, the instructions also included justifiable reliance as an aspect of proximate cause.

Some background is important here. Initially the Redicks chose to proceed on a theory of negligent misrepresentation. To prevail on that theory under North Carolina law, a plaintiff must show that she "[1] justifiably relies [2] to h[er] detriment [3] on information prepared without reasonable care [4] by one who owed the relying party a duty of care." *Raritan River Steel v. Cherry, Bekaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1998) (internal quotations omitted). Indeed, the Fourth Circuit has explained that, under North Carolina law, "'[j]ustifiable reliance is an essential element of . . . negligent misrepresentation.'" *Broussard* v. *Meineke Discount Muffler Shops, Inc*., 155 F.3d 331, 341 (4th Cir. 1998) (quoting *Helms v. Holland*, 478 S.E.2d 513, 517 (N.C. Ct. App. 1996)). After Smith & Nephew, in a renewed motion for summary judgment, provided North Carolina case law indicating that a theory of negligent misrepresentation could not support recovery for personal injury, the court allowed the plaintiffs to proceed on a similar theory under traditional negligence rules. (ECF 2920, Order). In discussing jury instructions, the plaintiffs argued that justifiable reliance should be viewed as part of proximate causation.  (ECF 748, Trial Tr.  (Aug. 11, 2021 a.m.) at 40-41, 65-71). The court then combined reliance and proximate causation in question six of the special verdict form and instructed the jury consistently with this understanding. (ECF 766-15 Ex. O, Trial Tr. (Aug. 12, 2021 a.m.), at 52-53; ECF 2920, Order on Renewed Mot. for Summ. J., at 1). Despite being directly asked by the court if they had any objections to the final jury instructions or verdict form after they were read to the jury, the plaintiffs failed to object. (ECF 825, Trial Tr. (Aug. 12, 2021) at 2-5).

Moreover, the plaintiffs' present argument conflicts with their position earlier in litigation. In their motion for summary judgment, the plaintiffs argued that "the essential elements [of

negligent misrepresentation] are that the plaintiff (1) justifiably relied to their detriment on (2) information prepared without reasonable care (3) by a person who owed the relying party a duty of care." (ECF 2515-1, Plaintiffs' Summ. J. Mem., at 16 (citing *Suntrust Mortg., Inc. v. Busby*, 651 F. Supp. 2d 472, 485 (W.D.N.C. 2009)). Once at trial, plaintiffs' counsel demonstrated their understanding that this element was relevant and contested by questioning both Dr. Bowling and Dr. Mont about the information reasonable doctors would want to know and on which they rely. (ECFs 766-13 Ex. M, Trial Tr. (Aug. 5, 2021 a.m.), at 40; 766-12 Ex. L at 12-18). Accordingly, including the element of justifiable reliance in the jury instructions does not merit a new trial.

The Redicks additionally contend that the jury's answer to question six stood in contrast to all relevant testimony: namely, that Dr. Bowling stated he relied on the voluntary communications and that Dr. Mont testified he believed it would be reasonable for a surgeon to rely on such communications from a medical device manufacturer. Contrary to the plaintiffs' argument that the verdict was decided against the overwhelming weight of the evidence, however, Dr. Bowling also attested that he could not specifically recall ever seeing the dear doctor letters, that he was aware of the increased risk of revision in females and patients with small head sizes at the time of Ms. Redick's implant, that he was familiar with the Australian registry data, and that he did not recall reading the 2010 label, which was available online and contained the risk information about females and patients needing smaller head sizes. (ECF 766-7 Ex. G, Trial Tr. (July 29, 2021 a.m. at 82-85; ECF 766-12 Ex. L at 34-35). Such evidence, *inter alia*, could lead a reasonable jury to conclude that the reliance and proximate cause element was not met. The court finds no reason to conclude that the jury's verdict is against the weight of the evidence such as to require a new trial.

### III.    The Exclusion of Evidence of the Kopjar Report and BHR Recall

The Redicks next argue that the court impermissibly denied the plaintiffs their right to admit evidence about the 2015 BHR recall and the Kopjar reports because Smith & Nephew opened the door through Dr. Mont's testimony about the reasons for the recall. But Dr. Mont did not testify about the recall. Nor did his admissible testimony about the relevance of ad hoc data in making individual treatment decisions and the use of OCY data (ECFs 766-16 at 65; 766-10 Ex. J, Trial Tr. (Aug. 4, 2021 a.m.) at 84-85, 93-95) "open the door" to evidence properly excluded under Fed. R. Ev. 401 and 403. *See United States v. Brown*, 921 F.2d 1304, 1307 (D.C. Cir. 1990). The "open the door" doctrine cited by the Redicks does not apply when counsel "did not 'open the door' by introducing inadmissible or irrelevant evidence." *Id.*; *see U.S. v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) ("Properly admitted evidence does not open the door to inadmissible evidence."). Dr Mont's testimony was relevant to addressing Dr. Bowling's testimony regarding his approach to utilizing ad hoc and Observable Component Year data. The admission of the Kopjar Report, produced well after Ms. Redick's implant, would have unfairly prejudiced the defendants by raising irrelevant and preempted issues of product recall.

IV.     **The Admission of the Canadian Training Program PowerPoint**

The Redicks next contend that the defendants' PowerPoint presentation from a Smith & Nephew training program held in Ontario, Canada in October 2010 (DX 7426) was inadmissible hearsay.[4] In support of this proposition, the plaintiffs cite *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, where Judge Rogers held that an internal training PowerPoint did not fit within the business records exception for hearsay. No. 3:19md2885, 2021 WL 954785, at *4, *15-16 (N.D.

---

[4] The plaintiffs also objected to its admission on the basis that they were not permitted to cross-examine the purported speaker, Dr. Su, nor any employee who participated in the training programs as a witness at trial. In fact, the authenticity of the PowerPoint was not challenged, and Dr. Su had been deposed before trial, but the plaintiffs objected to use of his deposition transcript at trial. (*See* ECF 766 at 25).

Fla. Mar. 14, 2021). As the jury was instructed, however, the PowerPoint in this case was offered

not for the truth of its contents but to show that Smith & Nephew offered the presentation to

surgeons during a relevant time period. The fact that the presentation contained information about

the risks to female patients and those needing smaller head sizes, whether or not the slides

themselves were accurate, was relevant to both the reasonableness of Smith & Nephew's conduct

and, in particular, to its potential liability for punitive damages.[5] Additionally, Dr. Bowling was

allowed to testify on rebuttal that he had not been present at the training. (ECF 766-12 Ex. 12 at

22-23).

As both of these rationales for admission of the PowerPoint are to prove something other

than the truth of the matter asserted therein, *see* Fed. R. Ev. 801, it is not hearsay and its admission

is not grounds for a new trial.[6] [7]

### V.    Evidentiary Rulings with Respect to Dr. Peter Heeckt

The plaintiffs argue that the court erred by limiting or excluding certain evidence related

to emails sent by Dr. Peter Heeckt, the Chief Medical Officer for Smith & Nephew. But they did

---

[5] *See* Gen. Stat. §§ 1D-5(7), 1D-15 (To support punitive damages, a plaintiff must show fraud, malice, or willful and wanton conduct that exhibits "conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm").

[6] The Redicks also assert that it was unfair to admit the PowerPoint because some of their evidence on punitive damages was determined to be inadmissible. But because some of the plaintiffs' evidence was inadmissible under the Federal Rules of Evidence does not entitle them to a ruling that the defendants' evidence, also relevant to a separate portion of their case, should be equivalently excluded wholesale.

[7] In their supplement filed on December 21, 2021, which was permitted to address Professor Graves's deposition, the plaintiffs inexplicably include an additional argument regarding the fully briefed PowerPoint issue and attach a "demonstrative" exhibit purporting to support their contention that the PowerPoint constituted inadmissible hearsay. (ECFs 806 at 5-8, 806-2 Ex. 2 at 2-9). The exhibit was prepared by plaintiffs' counsel yet unfairly displays Smith & Nephew's logo. Both the argument and the exhibit will be stricken from the record pursuant to Fed. R. Civ. P. 12(f) and as outside the purpose for which the court permitted supplemental briefing.

not identify any such emails that were actually excluded from trial.  The most relevant email from Dr. Heeckt, PX0014, was admitted as evidence of Dr. Heeckt's state of mind, such that the plaintiffs could argue it supported their claim that the company made misleading voluntary communications, but could not support a challenge to the FDA labels themselves. (ECF 766-12 Ex. L, Trial Tr. (Aug. 10, 2021), at 4-6). This instruction was appropriate. Further, this ruling did not prejudice the plaintiffs, as the jury found that a misleading representation had been made. Rather, it was the element of reliance and proximate cause that the jury found had not been proved.

## VI.     The Admission of Certain Opinions of Dr. Thorsten Seyler

The plaintiffs next argue that Dr. Thorsten Seyler, one of Smith & Nephew's expert witnesses, was improperly allowed to testify that Ms. Redick suffered a femoral neck stress fracture. The court found his testimony admissible pretrial after concluding that it was permissibly based on his professional opinion after reviewing Ms. Redick's medical charts. (ECF 2717 at 25-27).

Dr. Seyler's trial testimony about Ms. Redick's possible fracture was not a surprise, as he previously had attested to this opinion at his deposition (ECF 2512-6 at 102-103) and in his expert report. (ECF 766-21 Ex. U, Seyler Rep. at 14). Furthermore, the plaintiffs' position that Dr. Seyler's opinion about a fracture was unsound because it was based on certain radiological scans and was not supported by the treating physicians' records was addressed thoroughly during cross-examination. Dr. Seyler's testimony does not provide any basis for granting a new trial.[8]

## VII.    The Exclusion of Certain Rebuttal Testimony of Prof. Steven Graves

---

[8] Further, Dr. Seyler's reliance on the FDA definition of metallosis to come to conclusions about Ms. Redick's diagnoses was permissible under the Federal Rules of Evidence and did not open the door to unrelated testimony about the 2015 FDA withdrawal of the BHR device. (ECF 766-23 Ex. W, Trial Tr. (Aug. 5, 2021 p.m.) at 3-4).

The plaintiffs' final argument for a new trial is that the court improperly prevented Professor Steven Graves, the Director of the Australian Orthopedic Association National Joint Replacement Registry, from testifying as a rebuttal witness. (*See* ECF 806, Supp. on Graves Test.). At trial, Smith & Nephew offered into evidence a letter from Professor Graves which denied the company permission to share certain ad-hoc data regarding revision rates with surgeons. The Redicks subsequently requested to call Professor Graves to testify about why he declined to allow Smith & Nephew to share the ad-hoc data, which the court rejected as unfair for failing to give Smith & Nephew any time to contact or depose Professor Graves before his live testimony. (ECF 766-10 at 7).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Fourth Circuit uses a five-factor test to determine whether a nondisclosure of a witness was "substantially justified or harmless" under Rule 37(c)(1). *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595-97 (4th Cir. 2003). These factors are: "(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony." *Id.* at 596 (internal quotation omitted).

Here, Professor Graves's testimony is not newly discovered evidence, nor is his exclusion from trial such a miscarriage of justice that it demands a new trial. Despite their contention that they only recently learned that Professor Graves was testifying in similar cases, the plaintiffs fail to provide an adequate reason why they did not attempt to contact or depose Dr. Graves until trial

was underway. (ECF 766-10 at 2-7). This is a basis for exclusion. *Osunde v. Lewis*, 281 F.R.D.

250, 258 (D. Md. 2012); *JFJ Toys, Inc. v. Sears Holdings*, 237 F. Supp. 3d 311, 326 (D. Md. 2017).

Nor did counsel proffer any specifics as to what Professor Graves's testimony would be. While

the Redicks assert that Professor Graves's letter was only disclosed to them toward the end of

discovery, this assertion, regardless of its veracity, does not shift the burden of disclosing Professor

Graves as a potential witness to Smith & Nephew before the start of trial. The plaintiffs were well

aware of the letter and its significance months before trial, and of its potential ambiguity, yet chose

not to engage Professor Graves or reach out to the organization he ran until the point at which

calling him would present an unfair and incurable surprise to the defense and considerable

disruption to the trial. While it may well be that Professor Graves will have relevant testimony to

offer at future trials (*see* ECF 806), the *Sherwin-Williams* factors clearly weighed in favor of

excluding Professor Graves's untimely testimony, and thus the court's decision to exclude it does

not merit a new trial in the Redicks' case.[9]

## CONCLUSION

For the reasons stated herein, the plaintiffs' motion for new trial will be denied. A separate

Order follows.


   1/18/22                                                                    /s/
Date                                                            Catherine C. Blake
                                                                United States District Judge

---

[9] The plaintiffs' supplement to their motion for new trial, which attaches the entire transcript of
Professor Graves's November 2021 deposition, does not point to any specific information that
suggests a miscarriage of justice underlying the jury's verdict.